**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

DEBY R. BURCH and
BRADLEY BONHAM, II,

             Plaintiffs,

v.                                      CIVIL ACTION NO.  5:05-cv-00831

DANNY MOORE, et al.,

             Defendants.

**MEMORANDUM OPINION**

This is a civil action brought pursuant to 42 U.S.C. § 1983.  Plaintiff Deby R. Burch ("Burch") asserts that defendants Corporal Tricia Miles (Jane Doe No. 1) and Deputy Aaron Lilly (John Doe No. 1), law enforcement officers employed by the Raleigh County West Virginia Sheriff's Department, and its Sheriff, Danny Moore, deprived her of a constitutionally protected liberty interest without due process of law when defendants allowed the removal her minor son from her custody without a court order.  Burch also contends that defendants violated both her and her son's right to be free from unreasonable searches and seizures.  In addition, Burch alleges that Corporal Miles and Deputy Lilly violated several West Virginia statutes during the incident and that Sheriff Danny Moore was negligent in his failure to properly train Corporal Miles and Deputy Lilly. Jurisdiction is present.  28 U.S.C. § 1331; 42 U.S.C. § 1983.  Before the Court is defendants'

unopposed motion for summary judgment.[1] [Docket No. 74].  Because defendants are shielded from

plaintiffs' claims by the doctrine of qualified immunity, defendants' motion is granted.

## I.  FACTS

The following facts are undisputed.  On March 4, 2004, Betty Bonham placed a 911 call to

the Raleigh County Sheriff's Department.  She reported that her husband, James Bonham, was on

his way to pick up their grandson, Bradley Bonham Jr. ("Bradley Jr.") from Baba Trailer Court in

Beckley, West Virginia at the home of Richard Marcum. [Docket No. 74, Ex. A 2:4-11].  She

reported that she and her husband had "guardianship" of Bradley Jr. and that his parents were

"messed up on drugs."  Id.  She alleged that Bradley Jr. was left alone with Mr. Marcum and that

Marcum was a "drug addict." [Docket No. 74, Ex. A 4:1-5].  She stated that it was urgent that an

officer meet her husband at the trailer park because her son, Bradley Sr. and his wife, Deby Burch,

planned to "take off with [Bradley Jr.]." [Docket No. 74 Ex. A 5:5-7].

---

[1] In this case, plaintiffs failed to respond to defendants' motion for summary judgment, despite repeated notice to do so.  This failure to respond, however, does not fulfill the burdens imposed on moving parties by Rule 56(c).  Section (c) of Rule 56 requires that the moving party establish, in addition to the absence of a dispute over any material fact, that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law."  Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).  The failure to respond to the motion does not automatically accomplish this.  Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law. Id.  This duty of the court is restated in section (e) of the rule, providing, "if the adverse party does not so respond, summary judgment, *if appropriate,* shall be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added).

The dispatcher proceeded to issue a report on the police radio, stating "Jimmy and Betty Bonham have custody of a four-year old grandchild, and the parents of the child are on drugs and have took the child  to Richie Marcum's house at Bubba Trailer Park."  [Docket No. 74 Ex. A 5:5-7].  A few moments later, Corporal Tricia L. Miles (formally Tricia McNiesh) ("Corporal Miles") responded to the radio call and spoke with the dispatcher. [Docket No. 74 Ex. A 9:1-17].  The dispatcher informed Corporal Miles that "the parents are on the way to get the child" and that "the grandfather has the papers with him."  [Docket No. 74 Ex. A 9:12-16].

At the time of the call, Corporal Miles was training Deputy Aaron Lilly.  Deputy Lilly accompanied Corporal Miles to the scene.  The officers met James Bonham at the entrance of the road leading to the trailer park.  When the officers and James Bonham arrived at Mr. Marcum's residence, Bradley Jr. and his parents, Bradley Sr. and Deby Burch, were seated in a vehicle "at the bottom of the road."  [Docket No. 74 Ex. B 10:1-3].

Corporal Miles stated that she was in possession of paperwork that transferred custody of Bradley Jr. to Betty and James Bonham.  [Docket No. 74 Ex. B 10:1-3].  Deby Burch ("Burch"), Bradley Jr.'s mother, objected, stating that she hadn't signed "any papers."  [Docket No. 74 Ex. B 10:6-7].  Corporal Miles informed Burch that she could only follow "the court order."  Id.  Burch was visibly upset.  Id.  Corporal Miles threatened to put Burch in jail if she didn't cooperate. [Docket No. 74, Ex. I 14:9-10].  At that time, Bradley Sr. approached Bradley Jr. and asked his son if he wanted to leave with his parents or go with his grandfather, James Bonham.  The child responded that he wanted to go with his grandfather. [Docket No. 74, Ex. C 52:16-23].  The child then left with his grandfather in his grandfather's vehicle.   [Docket No. 74, Ex. B 28:1-7].

Soon after, Burch and Bradley Sr. left the state and traveled to Cocoa Beach, Florida.[2]

## II.  STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  When determining whether there is an issue for trial, the court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party.  Id.  Summary judgment is appropriate when the non-moving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of their position.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The qualified immunity inquiry is a pure question of law and always capable of decision at the summary judgment stage.  DiMeglio v. Gaines, 45 F.3d 790, 794 (4th Cir. 1995).  If the law does not put the officer on notice that his conduct would be clearly unlawful, summary judgment is appropriate.  Saucier v. Katz, 533 U.S. 194, 203 (2001).

---

[2] All factual disputes, if any, have been resolved in the light most favorable to the plaintiffs.

### III.  ANALYSIS

**A.  The Doctrine of Qualified Immunity under 42 U.S.C. § 1983**

Defendants' summary judgment motion, as it relates to the § 1983 claims, largely hinges on the defense of qualified immunity.  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier, 533 U.S. at 200.  "It is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails  the risk of personal liability for one's official decisions." Donovan v. City of Milwaukee, 17 F.3d 944, 947 (7th Cir. 1994).  The doctrine protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).  Put simply, qualified immunity will serve to protect "all but the plainly incompetent and those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

To determine whether an officer's conduct is protected by the doctrine, the Fourth Circuit employs the following two step test: 1) taken in the light most favorable to the plaintiff, whether the facts alleged show the officer's conduct violated a constitutional right; and, if so, 2) whether that constitutional right was clearly established at the time of the alleged violation.  A court conducts this latter inquiry by determining whether a reasonable officer would have understood that her conduct violated the asserted right. Miller v. Prince George's Country, 475 F.3d 621, 626-27 (4th Cir. 2007).  "Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of showing that the defendant's alleged conduct violated the law and that such law was clearly established when the alleged violation occurred." Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993) (quoting Dixon v. Richer, 922 F.2d 1456, 1460 (10th Cir. 1991)).

1.  Plaintiffs' Fourteenth Amendment Claim

a.  *Constitutional Violation*

Burch claims in Count III of her Amended Complaint that she has a Fourteenth Amendment

liberty interest in the custody of her child and that she was deprived of this interest without due

process when defendants transferred possession of her minor child to his paternal grandfather on the

basis of a guardianship agreement and in the absence of a court order.  The Fourth Circuit has held

that "the state's removal of a child from his parents indisputably constitutes an interference with a

liberty interest of the parents and thus triggers the procedural protections of the Fourteenth

Amendment." Jordan v. Jackson, 15 F.3d 333, 342-43 (4th Cir. 1994); Truelove v. Hunt, 67 F. Supp.

2d 569, 576 (D.S.C. 1999). "The precise contours of this right, however, are not clearly established."

Jordan, 15 F.3d at 343.  Specifically, "the maxim of familial privacy is neither absolute nor

unqualified and may be outweighed by a legitimate government interest."  Hodge v. Jones, 31 F.3d

157, 163-64 (4th Cir. 1994).  In most instances, a state may not deny a parent custody of their child

without notice or an adequate hearing.  Jordan, 15 F.3d at 343.

In Truelove v. Hunt, the defendants removed an infant from her mother's home and

transferred custody to the father on the basis of an invalid, and patently forged, court order.  67 F.

Supp. 2d at 576.  The court first found that a forged order would give the officers no official

authority to act, and, second, that acting pursuant to a forged court order was tantamount to acting

without a court order.  On this basis, the Court held that plaintiffs' allegations, if true, asserted a

valid constitutional violation.  Id. at 578.

Here, although plaintiffs do not argue that the guardianship document was intentionally

altered to represent a court order, they do argue that Bradley Jr. was removed from Burch's custody

with a document that "in no way resembles . . . a court order." [Docket No. 61 ¶ 6].  By Corporal

Miles's conduct, she was seeking to assist James Bonham in realizing the rights given to him by the

guardianship document, as those rights had been explained to her by James Bonham.  Nevertheless,

the guardianship document did not legally transfer custody rights to James and Betty Bonham.

Accordingly, viewing the facts in the light most favorable to plaintiffs, on the occasion in question,

Corporal Miles's conduct may well have constituted government interference with Burch's right to

custody of Bradley Jr. because it is uncontested that Corporal Miles allowed the removal of the child

from his mother without a legally sufficient document and without notice or an adequate hearing.

See Jordan, 15 F.3d 333, 343 (4th Cir. 1994).

> b. *Clearly Established Law*

Because plaintiffs have survived the threshold inquiry, the next step is to ask whether the

constitutional right was clearly established.  This inquiry must be undertaken in light of the specific

facts and circumstances of the case, not as a broad general proposition.  Saucier, 533 U.S. at 202.

A law is clearly established when it has been authoritatively decided by the Supreme Court,

the appropriate United States Court of Appeals, or the highest court of the state in which the action

arose.  Jean v. Collins, 155 F.3d 701, 709 (4th Cir. 1998).  For the purpose of this analysis, the

question is not whether it was clearly established that an officer may not interfere with a mother's

liberty interest in her child's custody without notice or an adequate hearing.  Jordan, 15 F.3d 333,

343 (4th Cir. 1994).  Such an inquiry does little to assist this Court in assessing the officer's actions

in this particular situation.  Rather, the question is whether it would be clear to a reasonable officer

in defendants' position that it was unlawful to allow James Bonham to take physical custody of

Bradley Jr. based on the guardianship document provided by James Bonham and the other

information of which they were aware.  To demonstrate this second element, a plaintiff must:  1)

point to closely analogous cases establishing that the conduct is unlawful; or 2) demonstrate that the

violation was so obvious that a reasonable state actor would know that what she is doing violates

the law.  Morrell v. Mock, 270 F.3d 1090, 1100 (7th Cir. 2001); see Jean, 155 F.3d at 709.

Because plaintiffs failed to oppose defendants' motion for summary judgment, they have not

identified closely analogous case law establishing that defendants' conduct was unlawful.  Plaintiffs

do, however, argue that Bradley Jr.'s removal violated Section 49-6-9 of the West Virginia Code,

and therefore violated clearly established law.  Specifically, section 49-6-9, entitled Custody in

Emergency Situations, provides that:

> (a) A child believed to be a neglected child or an abused child may be taken
> into custody without the court order otherwise required by section three of
> this article by a law-enforcement officer (1) if the child is abandoned as
> defined in subsection (g) of this section, or (2) if such officer determines that
> the child is in a condition requiring emergency medical treatment by a
> physician and the child's parents, parent, guardian or custodian refuses to
> permit such treatment, or is unavailable for consent. A child who suffers
> from a condition requiring emergency medical treatment, whose parents,
> parent, guardian or custodian refuses to permit the providing of such
> emergency medical treatment, may be retained in a hospital by a physician
> against the will of such parents, parent, guardian or custodian, as provided
> in subsection (c) of this section.

W. Va. Code § 49-6-9.  Plaintiffs presumably argue that because Bradley Jr. was removed without

a court order, the only remaining legal justification for his removal was an emergency situation.

However, the fact that defendants' may have violated this particular West Virginia statute is of no

consequence in a Section 1983 action.  It is well established that the mere existence of a state law

does not necessarily create an interest that is protected by the Due Process Clause.  See Olim v.

Wakinekona, 461 U.S. 238, 248-51 (1983);  Hodge v. Jones, 31 F.3d 157, 168 (4th Cir. 1994)

(violation of state law alone is of no consequence in a § 1983 action because a violation of a state's law or procedural rules, creating rights beyond those guaranteed by the Constitution, cannot support a federal due process claim); Ricco v. County of Fairfax, 907 F.2d 1459, 1466 (4th Cir. 1990).  Here, plaintiffs fail to assert that § 49-6-9 creates an interest that is also protected by the Due Process Clause, despite their evidentiary burden to do so.  Bryant, 994 F.2d at 1086.

In addition, plaintiffs have failed to proffer sufficient evidence demonstrating that Bradley Jr. was actually "taken into custody," a fact that is clearly contemplated by the plain language of the statute.  W. Va. Code § 49-6-9.  The record reveals that Corporal Miles and Deputy Lilly were present at the scene in a civil stand-by capacity.  They never took physical possession of Bradley Jr., instead allowing the child to leave the scene with his paternal grandfather. [Docket No. 74, Ex. H 32:5-7].

There are two cases that are particularly instructive in evaluating the events that transpired in this case.  In Truelove, the district court held that it is a violation of the Fourteenth Amendment for law enforcement officials to take a child from a parent based on a patently false and forged court order.  67 F. Supp. 2d at 580.  Specifically, the court found that the officers' conduct was in violation of clearly established law because at the time of the incident the officers had knowledge of the following facts: 1) that the father was harassing the mother to procure custody of his daughter; 2) the order appeared to be written in the father's handwriting; 3) that the order was hand-delivered by the father to the police station; and 4) the order was issued by "The Court of General Justice,"which is not a legitimate judicial entity in the state of South Carolina, or any other state. Id. at 580-81.  Based on these facts, the court found that a reasonable state actor should have known

that the court order was forged and therefore invalid, and thus their actions were tantamount to

acting without a court order in violation of the Due Process Clause.

In Williams v. Blaisdell, an officer performing a civil stand-by was immune from suit despite

his failure to request or review a child custody agreement. 173 F. Supp. 2d at 578-79.  The child's

father informed the officer that he was entitled to custody of his daughter every first, third and fifth

Friday of each month.  Id.  The officer, relying on the father's assertion that he was entitled to

custody on the day of the incident, allowed the child to leave with her father over the mother's

objection.  The mother failed to inform the officer that she had the right to refuse to relinquish

possession of the child for any reason other than the father's  tardiness.  Id.  The language of the

custody agreement, however, provided that the mother was entitled to custody of her daughter on

that particular Friday because of the approaching Christmas holiday.  Id.  The Court, holding that

the officer's misunderstanding of the custody order was protected by qualified immunity,  stated the

following:

> While some officers might have insisted on seeing a copy of the custody
> order before acting, one cannot say that it would be objectively unreasonable
> for an officer who has been told by a father that the order gave him the right
> to custody over the weekend, and who was not told by the mother that the
> father had misrepresented the order or that the father was mistaken
> concerning the terms of the order, to accept the word of the father in the
> making of the decisions the officer was required to make on the spot.

Williams, 173 F. Supp. 2d at 578-79.

Here, the conduct of defendants is more similar to the conduct protected in Williams  than

the conduct prohibited by Truelove.  As a preliminary matter, the guardianship agreement is not so

patently deficient as to cause this Court to find that defendants were on notice that their decision to

allow a custody transfer based on that document was clearly unlawful.  Corporal Miles testified that

10

she believed she was in possession of a valid custody order when she approached the plaintiffs. [Docket No. 74, Ex. B 17-21].   The guardianship agreement, which is entitled "Power of Guardianship" and signed by Bradley Bonham Sr., states, in pertinent part:  "[f]or Bradley Scott Bonham II, my minor son, I have made, constituted and appointed . . . my child's paternal grandmother and paternal grandfather, wife and husband, James Bonham and Betty Bonham . . . as the true and lawful guardians of my child . . . ."  [Docket No. 61 Ex. 2].  The document also states "[a] purpose in my execution of this document is to allow my child's paternal grandmother and paternal grandfather, James and Betty Bonham, wife and husband, to perform on my behalf all of my duties and responsibilities as parent of this child while my child is in the physical custody of my child's paternal grandfather and paternal grandmother, James Bonham and Betty Bonham, wife and husband." [Docket No. 61 Ex. 2].  In addition, James Bonham's statements that he and his wife had been awarded legal custody of Bradley, Jr. went unchallenged during the entire incident. [Docket No. 74, Ex. B 10:4-11].  Burch never stated to defendants on the day of the incident that the she, and not the Bonhams, had legal custody of Bradley Jr.  In fact, Burch admitted that she believed that the guardianship document transferred legal custody of her child to the Bonhams in November 2003, more than four months before the incident at issue. [Docket No. 74, Ex. I  24:5-9; 30:23; 31:1-2; 31:13-16].  Burch's only objection to Corporal Miles during the incident was that she never signed the guardianship document.  [Docket No. 74, Ex. B 10:4-11].[3]

---

[3] The record reflects that plaintiff sought counseling in December 2003 partially because she believed that she no longer had custody of Bradley Jr. [Docket No. 74, Ex. J 1-3].  Thus, plaintiff believed that James and Betty Bonham had legal custody of Bradley Jr. more than three months before the incident in question.

While some officers might have realized that the guardianship document was not a court order or the equivalent of a court order transferring custody, one cannot say that it would be objectively unreasonable for an officer who has been told by the grandfather that the agreement transferred custody, and who was not told by the mother that the grandfather had misrepresented the document or that the grandfather was mistaken concerning his rights to custody, to accept the word of the grandfather in making the decision that they were required to make at that moment. Additionally, when Corporal Miles first heard the radio transmission, the dispatcher stated that "Jimmy and Betty Bonham have custody of a four-year old grandchild" and "the grandfather has the papers with him." [Docket No. 74 A 9:12-16]. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205.

This Court cannot find that no reasonable police officer would have conducted themselves as defendants did on the occasion in question. Although their actions were ill-advised, this Court cannot say that their actions were wholly unreasonable, particularly in light of Burch's admission that she believed that the Bonhams had legal custody of Bradley Jr., and her failure to contest the Bonhams' right to custody in the defendants' presence. See Malley, 475 U.S. at 341 (qualified immunity will serve to protect all but the plainly incompetent and those who knowingly violate the law); Maciariello, 973 F.2d at 298 (qualified immunity protects law enforcement officers from bad guesses in gray areas).

This Court is persuaded that the due process violation that may have occurred in this case was not clearly established and that no reasonable jury could conclude that the violation was so obvious that a reasonable state actor would have known that defendants' conduct was illegal.

Accordingly, the Court grants summary judgment with respect to Count III of plaintiffs' Amended Complaint.

### 2.  Plaintiffs' Fourth Amendment Claim

Plaintiffs contend in Count I of their Amended Complaint that defendants violated their Fourth Amendment right against unreasonable searches and seizures.  Plaintiffs do little more than allege this violation in their pleading.  However, because this Court must assess whether defendants are entitled to judgment as a matter of law, it has engaged in a review of the record to assess these claims. See Custer, 12 F.3d at 416.

A seizure for Fourth Amendment purposes occurs when, by means of physical force or a show of authority, an individual's freedom of movement is restrained.  United States v. Mendenhall, 446 U.S. 544, 546 (1980).  As a preliminary matter, and as the Court found above, there is nothing in the record to suggest that Bradley Jr. was seized within the meaning of the Fourth Amendment. Defendants did not physically force Bradley Jr. to leave with his grandfather, nor did they take physical possession of Bradley at any time during the incident.  In fact, Bradley Jr.'s decision to the leave with his grandfather was his own.  [Docket No. 74, Ex. C 52:16-23].  Thus, it does not appear from the record that Bradley Jr.'s freedom of movement was restrained by defendants' conduct.  In any event, plaintiffs fail to allege sufficient facts asserting a viable Fourth Amendment claim on behalf of Bradley Jr.

However, based on the Court's review of the record, Burch testified that Corporal Miles allegedly threatened to put Burch "in jail" if she did not allow Bradley Jr. to leave with James Bonham.  [Docket No. 74, Ex. I 14:9-10].  Under United States v. Mendenhall, use of language indicating that compliance with the officer's request might be compelled constitutes a seizure within

13

the meaning of the Fourth Amendment. 446 U.S. at 546. Thus, Corporal Miles's threat to arrest Burch if she did not allow Bradley Jr. to leave with his grandfather is arguably a seizure under the Fourth Amendment. See Bennett v. Town of Riverhead, 490 F. Supp. 481, 487 (E.D.N.Y. 1996) (finding cognizable Fourth Amendment claim where plaintiff threatened with arrest during removal of child by authorities).

The Fourth Amendment, however, permits an officer to briefly seize an individual if that officer has a reasonable suspicion supported by articulable facts that the individual is engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 30 (1968). Here, Corporal Miles's limited seizure of Burch (caused by her threat of arrest) was not unreasonable under these circumstances. Specifically, Corporal Miles was there to maintain the peace during what she believed to be a lawful custody transfer between Deby Burch and James Bonham. Burch's statements and conduct threatened to compromise that transfer, and such interference is a crime in West Virginia. See W. Va. Code § 61-2-14d(a) (any person who attempts to deprive a legal guardian of their right to lawful custody in violation of a court order shall be guilty of a felony). That Miles was ultimately incorrect in her impression of the lawfulness of situation is of no moment. See Terry, 392 U.S. at 25; Krantz v. City of Toledo Police Dept., 197 Fed. Appx. 446, 453 (6th Cir. 2006). Thus, Corporal Miles's brief seizure of Burch, if a seizure occurred at all, for the limited purpose of permitting a peaceful transfer does not run afoul of the Fourth Amendment.

Thus, even when taken in the light most favorable to plaintiffs, the facts alleged do not demonstrate that the defendants' conduct violated their Fourth Amendment rights.[4] Because

[4] Plaintiffs do not allege, nor does the record indicate that any search occurred during the incident. In addition, plaintiffs does not allege that Corporal Miles and Aaron Lilly entered the
(continued...)

14

plaintiffs have failed to allege a viable constitutional violation, the qualified immunity analysis ends. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquires concerning qualified immunity."   Saucier, 533 U.S. at 201. Accordingly, defendants are entitled to judgment as a matter of law on Count I of the Amended Complaint.

### B.  Plaintiffs' claims against defendant Sheriff Danny Moore in his official capacity

Plaintiffs also contend in Counts I and III of the Amended Complaint that Sheriff Danny Moore violated their Due Process and Fourth Amendment rights.  In addition, Plaintiffs allege, inter alia, in Count VI of their Amended Complaint that Sheriff Moore failed to properly train Corporal Miles and Deputy Lilly, and that such failure was the moving force behind the violation of plaintiffs' constitutional rights.

A suit against a public official in his official capacity is nothing more than a suit against the entity for which he is an agent.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  To establish liability against a political subdivision under § 1983, a plaintiff must prove that a policy, practice, or custom of the that subdivision caused a constitutional deprivation.  Id.  The Fourth Circuit has held that this requires a plaintiff to prove the following three elements:  1) a policy maker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom.  See Belcher v. Oliver, 898 F.2d 32, 36 (4th Cir. 1990).  The unconstitutional conduct must be directly attributable to the political subdivision through some sort of official action

---

[4](...continued)
plaintiffs' residence.

or imprimatur; [and,] isolated or single events of unconstitutional actions by employees will almost never trigger liability. <u>Monell</u>, 436 U.S. at 694.

Here, it is uncontested that plaintiffs have failed to assert a policy, practice, or custom of the Raleigh County Sheriff's Department that allegedly caused plaintiffs' asserted constitutional deprivations.  Accordingly, defendant Sheriff Danny Moore is entitled to judgment as a matter of law with respect to Counts I, III and VI of plaintiffs' Amended Complaint.

### C.  Plaintiffs' State Constitutional Claims under W. Va. Code § 29-12A-5

Plaintiffs also allege violations of their state constitutional rights in Counts VII, IX, XI, and XIII.  Specifically, plaintiffs allege violations of Article 3 § 1, Article 3 § 6, and Article 3 § 10 under the West Virginia Constitution.  The <u>Erie</u> doctrine requires that plaintiffs' state constitutional tort claims are decided under the law of West Virginia.  <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938).  Unfortunately, plaintiffs do little more than allege these violation in their Amended Complaint, and have failed to demonstrate, by specific allegations, that the defendants are not entitled to statutory immunity under the West Virginia Governmental Tort Claims and Insurance Reform Act ("Act")  W. Va. Code § 29-12A-5 <u>et</u> <u>seq.</u>

The Act immunizes employees of a political subdivision from tort liability, unless his or her acts or omissions were manifestly outside the scope of employment or official responsibilities, or unless the employees' acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless manner, or unless any statute expressly imposes liability upon the employee.  W. Va. Code § 29-12A-5(b)(1)-(3).  It is uncontested that defendants Corporal Miles, Deputy Lilly and Sheriff Moore are employees of a political subdivision, the County Commission of Raleigh County. Thus, plaintiffs are required under West Virginia law to make *specific* allegations that effectively

16

demonstrate that defendants' are not entitled to the benefit of immunity under W. Va. Code § 29-12A-5(b).  Hutchinson v. City of Huntington, 198 W. Va. 139, 140 (1996) (emphasis added).  This requirement has been strictly construed and plaintiffs' failure to allege specific exceptions under § 29-12A-5(b) will result in the summary disposition of plaintiffs' claims.  Id.  Here, it is uncontested that plaintiffs have failed to specifically allege that defendants' actions were manifestly outside the scope of their employment or official responsibilities, or that their actions were taken with malicious purpose, in bad faith or in a wanton or reckless manner.  Plaintiffs have also failed to point to any statute that expressly imposes liability upon the defendants.  In addition, the Court finds that defendants' actions cannot be characterized as falling within the exceptions as set forth in § 29-12A-5(b).  Accordingly, defendants are  entitled to judgment as a matter of law with respect to Counts VII, IX, XI, and  XIII of plaintiffs' Amended Complaint.

### D.  Plaintiffs' Claims under W. Va. Code § 55-7-9

Count XVII of plaintiffs' Amended Complaint asserts a cause of action under W. Va. Code § 55-7-9.  Section 55-7-9 provides that "any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."  Id.  Specifically, plaintiffs seek to recover damages under three West Virginia criminal statutes, § 61-2-14(b) (abduction of a person), § 61-2-14d(a) (taking of a child from lawful custodian in violation of court order), and § 61-2-14e (aiding and abetting a criminal offense).  However, plaintiffs are required to demonstrate that a private cause of action exists under these statutes pursuant to Hurley v. Allied Chemical Corp., 164 W. Va. 268, 262 (1980) before they can allege that they are entitled to damages.  Plaintiffs have failed to so much as even address this

17

issue.  In addition, plaintiffs are confronted with the same immunity issue under W. Va. Code § 29-12A-5(b) as they encountered with respect to their state constitutional claims.  Thus, even if plaintiffs were able to establish that private causes of action exist under these criminal statutes, plaintiffs would still need to demonstrate an exception under § 29-12A-5(b).  It is uncontested that plaintiffs have failed to do so in this case.  Accordingly, defendants are  entitled to judgment as a matter of law with respect to Count XVII of plaintiffs' Amended Complaint.

## IV.  CONCLUSION

For the reasons stated herein, the Court **GRANTS** defendants' motion for summary judgment [Docket No. 74] in its entirety.

ENTER:        March 8, 2007

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE